IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>RICHARD CARMAN<br><br>Defendant. | Case No. 02-CR-464-1<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Defendant Richard Carman seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons herein, this Court denies Carman's motion for compassionate release.

**I. Background**

In December 2002, the government charged Carman and eight others with committing various racketeering and drug crimes. [52]. On December 10, 2004, Carman pleaded guilty to racketeering in violation of 18 U.S.C. § 1962(c) and 2 (Count 1), violent crime in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Count 5), and possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and 2 (Count 11). [384]. The Court sentenced Carman to 53 years on Count 1 and 53 years on Count 5, to be served concurrently. [442]. On Count 11, the Court sentenced Carman to 7 years, to run consecutively to the sentences imposed on Counts 1 and 5. *Id.* The Court also ordered 5 years of supervised release

1

and for Carman to pay a $300 special assessment. *Id.* Carman has been incarcerated since his arrest on May 8, 2002.

On November 16, 2020, Carman sent a letter requesting appointment of counsel in connection with a possible motion for compassionate release under the Cares Act. In his request, Carman stated that has high cholesterol and low vitamin deficiency [732]. The Court shortly after denied Carman's request because the medical conditions outlined in the request—high cholesterol and vitamin deficiencies—are not those which the CDC lists as risk factors for COVID-19. [733].

Carman now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that extraordinary circumstances, namely the health of his fiancée, care of his children, and his rehabilitation, warrant a sentence reduction. [792]. The Government filed a brief in opposition to compassionate release pursuant to § 3582(c)(1)(A), asserting that Carman failed to satisfy the statute's exhaustion requirement, and fail to demonstrate any extraordinary or compelling reasons that would warrant a sentence reduction. [817].

II. **Standard of Review**

Under 18 U.S.C. § 3582(c)(1)(A), this Court may grant a defendant's motion for compassionate release after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Once a defendant satisfies the exhaustion requirement, courts use a two-step analysis to evaluate a motion for compassionate release. *United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022). First, the defendant must present an extraordinary and compelling reason that warrants a sentence reduction. *Id.*; *United States v. Thacker*, 4 F.4th 569, 573 (7th Cir. 2021). If a court finds that such reasons exist, then it must weigh applicable sentencing factors in 18 U.S.C. § 3553(a). *Peoples*, F.4th at 840; *United States v. Sarno*, 37 F.4th 1249, 1253 (7th Cir. 2022).

Courts use the sentencing guidelines promulgated by the U.S. Sentencing Commission to identify extraordinary and compelling reasons. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). On November 1, 2023, the Sentencing Commission amended Section 1B1.3 of the U.S. Sentencing Guidelines, updating the policy statement to cover prisoner-initiated motions for compassionate release. U.S. Sentencing Comm'n, *Adopted Amendments (Effective November 1, 2023)*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

"A movant cannot rightly claim he is legally *entitled* to compassionate release because the background sentencing law has changed, but he may argue that he nonetheless *deserves* a sentence reduction based on that change and other relevant factors." *In re Thomas*, 91 F.4th 1240, 1242 (7th Cir. 2024)*; cf. Thacker*, 4 F.4th at 576 ("At step one the [defendant] must identify an "extraordinary and compelling" reason warranting a sentence reduction, but that reason cannot include, whether

3

alone or in combination with other factors, consideration of the First Step Act's amendment to [a statute].").

### III. Analysis

To file a motion in court to seek a reduction in their sentence, a defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his] facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement in § 3582(c)(1)(A) is an affirmative defense, rather than a jurisdictional prerequisite, and therefore, if the government elects not to raise it, the court will not consider it. *United States v. Gunn*, 980 F.3d 1178, 1179. However, when properly invoked, the exhaustion requirement is a mandatory claims-processing rule that must be enforced. *United States v. Sanford*, 986 F.3d 779 (7th Cir. 2021) (describing the language of § 3582(c)(1)(A) as that of "a paradigmatic mandatory claim processing rule").

The Government has properly invoked the statutory exhaustion of administrative remedies requirement. [817] at 8–9. The government asserts that Carman did not exhaust his administrative remedies before filing his motion for compassionate release. *Id.* They argue Carman only exhausted his administrative remedies "with respect to any claims related to the risks to his personal health associated with the COVID-19 pandemic," not regarding any of the claims made in the instant motion. *Id.* at 9.

4

Indeed, Carmen's early filings from the BOP's administrative remedies process were centered on claims relating to his health and the risks of the COVID-19 pandemic. In the Request for Administrative Remedy dated November 14, 2020, Carman requested that the Bureau of Prisons move under § 3582(c)(1) for a reduction in sentence based on the "COVID-19 outbreak" and his health risk factors, such as "heart condition, diabetes, high blood pressure and many other health ailment[s]." [792] at 37. Carman's request, summarized as having been "based on concerns related to COVID-19 and the Cares Act," was denied on January 6, 2021. *Id.* at 46–47. On January 13, 2021, Carman filed a Request for Administrative remedy asking the Warden to reconsider his denial of Carman's November 14, 2020, request for compassionate release. *Id.* at 55. Carman's Request for Administrative Remedy was then denied on January 19, 2021, again described by the Warden to have been requested "based on [Carman's] health as it relates to the COVID-19 pandemic." *Id.* at 38–39.

Carman also raised his mother's health and her care of his nieces and nephews. In his Regional Administrative Remedy Appeal dated January 24, 2021, Carman wrote "[his] mother's incapacitation" and "[his] own sister's murder" are some of the "main grounds of [Carman's] Request for Compassionate Release Motion . . . ." [792] at 44. In Carman's request dated November 14, 2020, Carman described the death of his sister and the needs of his mother, who "is herself sick" and who "needs [him] as she does not have any one to take care of her," as part of the circumstances justifying compassionate release *Id.* at 37. The Regional Director denied Carman's appeal of his

5

request for compassionate release "due to the COVID-19 pandemic, the health of [his] mother and the murder of [his] sister." *Id.* at 40. Accordingly, Carman appears to have satisfied the exhaustion requirement as to the risks to his health associated with COVID-19, the health needs of his mother, and the care of his nieces and nephews.

But Carman's instant motion is not based on the issues he exhausted: COVID-19 health risks, his mother's healthcare, or care of his extended family members. Instead, Carman seeks compassionate release here based on the medical conditions and financial need of his fiancé and care for his children. He never asked the Bureau for release on these grounds. Under § 3582(c)(1)(A), a defendant must "present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) (finding that administrative exhaustion was not met where the petitioner moved in district court for compassionate release based on risks from the COVID-19 pandemic meanwhile his request to the prison's warden to move for his compassionate release was asserted on entirely different grounds). To allow otherwise would undermine the very purpose of exhaustion, to provide information to "allow the Bureau to 'bring a motion on the defendant's behalf,' before he moves on his own behalf." *Id.* (citing § 3582(c)(1)(A)).

Because Carman submitted this motion for compassionate release based on grounds different from those raised in the BOP administrative process, the Court

finds that Carman has not exhausted his administrative remedies on the subject of his fiancé's medical and financial circumstances.

### B. Conclusion

For the stated reasons, this Court denies Richard Carman's motion for compassionate release. [792][793]. The Court, in its discretion, denies Carmen's motion for attorney representation. [812].

E N T E R:

Dated: July 14, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge